UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

GRANT AYERS                                                                                          PLAINTIFF

v.                                                                                  CIVIL ACTION NO. 3:05CV75

CITY OF HOLLY SPRINGS, MISSISSIPPI
and JOSEPH THOMAS, SR., in his individual
capacity                                                                                          DEFENDANTS

**ORDER**

This cause comes before the court on the motions of defendants City of Holly Springs, Mississippi and Joseph Thomas, Sr. for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Grant Ayers has responded in opposition to the motions, and the court, having considered the memoranda and submissions of the parties, concludes that the City's motion should be granted and that Thomas' motion should be denied.

This is a 42 U.S.C § 1983 action in which plaintiff seeks recovery for, *inter alia,* First and Fourth Amendment violations allegedly committed by defendant Thomas while performing his duties as a (former) Holly Springs police officer. At the summary judgment stage, this court is required to view the facts in the light most favorable to plaintiff, as the non-moving party. Plaintiff describes the events giving rise to the present lawsuit as follows:

> Grant Ayers is a longtime resident of Holly Springs. At approximately 8:45 p.m. on October 10, 2003, Plaintiff, Grant Ayers, and his sons, Brandon (age 13 at the time) and Grantham (age 8 at the time) were en route to Wal-Mart in Holly Springs, Mississippi. Ayers was driving in a lawful fashion as he moved into the turning lane and waited until he received a green turn arrow at the traffic light before making a left hand turn. Almost immediately, he was pulled over by the Defendant Thomas. Unsure [of] what he had

1

done to merit the stop, Ayers asked Defendant Thomas, "May I help you, sir?" Thomas demanded Ayer's license, and Ayers inquired, "May I ask why, sir?" Without any factual basis, Thomas replied that Ayers had just run a red light. He then asked Ayers for proof of insurance. As Ayers was searching his glove compartment for his insurance information, his sons asked what he had done to be stopped. Ayers stated that he had done nothing wrong. This comment apparently enraged Thomas, who yelled, "shut up and find your proof of insurance before I lock your smart ass up!" Ayers asked Thomas not to talk like that in the presence of his children, and Thomas repeated, "Shut the hell up!" Growing increasingly concerned about Thomas' unreasonable behavior, Ayers asked if he could call someone else to the scene or "back up from another officer". Thomas replied, "I'm not calling nobody. I don't need no damned body to back me nothing. You're getting this ticket; I don't care who says what." Ayers advised Thomas to write the ticket, and that he would just see Thomas in court. By this time, Thomas had become even angrier and threatened Ayers, stating, "Every time I see you again, I'll write you another ticket!" Ayers received his citation and immediately proceeded to the police station to make a complaint about Thomas' threats and harassment. Thomas followed Ayers to the station.

At the police station, Ayers attempted to speak with Officer Dwight Harris about the procedures for filing a complaint against Thomas. However, Thomas repeatedly interceded, shouting, "You want to make a complaint about me? I'll give you something to make a complaint about, motherfucker!" Thomas rushed Ayers, getting in his face and bumping him with his body. He pointed his finger in Ayers' face, screaming, "Boy, I'll fuck you up! You don't know me! Officer Harris repeatedly asked Defendant Thomas to calm down and to leave the office, but he refused, stating, "I'm not going anywhere. This nigger can say what the hell he's got to say in front of me." Seeing that he was not going to be able to talk Thomas into leaving, Officer Harris asked Ayers to leave the police station and return the following day to make the complaint. As Ayers tried to leave, however, he was again accosted by Thomas, who screamed, "I'll fuck you up! I'll kick your motherfucking ass, nigger!" Thomas had to be restrained by two other officers as Ayers left the police station.

The following day, Ayers made a written complaint about Thomas' behavior, and the Defendant City commenced an investigation. Before the investigation could be completed, Thomas submitted his resignation. The charge of running a red light was later dismissed.

Thereafter, Ayers learned that Thomas had filed an affidavit against him, maliciously and without any probable cause, charging that Ayers had threatened him. After a trial, Ayers was found not guilty.

The City had prior knowledge of Thomas' inability to control his temper. A reasonable background check would have determined that Thomas was not fit to be an officer.

Plaintiff contends that his allegations are sufficient to establish fact issues regarding defendants' liability under § 1983. Defendants dispute this contention and argue that no genuine fact issues

2

exist in this regard and that summary judgment is appropriate as a matter of law.

In addressing qualified immunity issues, this court proceeds in three steps. First, the court must ask whether the plaintiff has alleged a violation of a constitutional right. *Aucoin v. Haney* 306 F.3d 268, 272 (5th Cir. 2002). Second, this court must inquire whether the constitutional right was clearly established at the time of the alleged violation. *Id.* If the court answers yes to both questions, it then asks whether the official's conduct was objectively reasonable in light of that established constitutional right. *Id.* In seeking summary judgment, Thomas argues that he violated no clearly established Constitutional rights of which a reasonable person would have been aware and that he is accordingly entitled to the defense of qualified immunity. The court concludes, however, that plaintiff's testimony regarding Thomas' actions at the police station is sufficient to establish fact issues as to whether that defendant's conduct was objectively unreasonable in light of clearly established First Amendment rights enjoyed by plaintiff.

Plaintiff's deposition testimony in this case clearly establishes fact issues as to whether Thomas sought to use threats and intimidation tactics to prevent plaintiff from filing a complaint against Thomas. Thomas notes, however, that, in order to establish a First Amendment violation, the plaintiff must first prove that her speech involved a matter of public concern, *see Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), and Thomas argues that the complaint in this case did not involve a matter of public concern. The standards for determining whether particular speech involves a matter of public concern are, unfortunately, rather imprecise. As guidance in determining whether speech addresses an issue of public concern, *Connick* instructs this court to consider "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48, 103 S.Ct. at 1690, *see also Johnston*

3

*v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1577 (5th Cir.1989) ("We do not review the [defendant's] words in a vacuum. Rather, we decide whether speech addresses a matter of public concern with reference to the 'content, form, and context of a given statement, as revealed by the whole record.'")

Considering the facts and context of this case as a whole, the court agrees with plaintiff that his report regarding Officer Thomas implicated a matter of public concern. In so concluding, this court places particular weight upon the Fifth Circuit's decision in *Thompson v. City of Starkville, Miss.*, 901 F.2d 456 (5th Cir. 1990). In *Thompson*, the Fifth Circuit concluded that a written grievance filed by plaintiff regarding alleged corruption among police officers involved a matter of public concern. In so concluding, the Fifth Circuit wrote as follows:

> This court has held, albeit under different facts, that where speech "complained of misconduct within the police department, it should be classified as speech addressing a matter of public concern." *Brawner v. City of Richardson,* 855 F.2d 187, 192 (5th Cir.1988). If released to the public, Thompson's affidavit would expose possible corruption in the police force of the City. *Cf. Brawner*, 855 F.2d at 191-92 ("The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department." (footnotes omitted)); *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir.1988) (per curiam) ("Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import.").

*Thompson.*, 901 F.2d at 463.

As was the case in *Thompson*, the Holly Springs public at large clearly had an interest in not being subjected to verbal harangues and threats by a Holly Springs police officer, and the City does not appear to dispute this fact. Indeed, it seems very arguable that plaintiff performed a valuable public service by making the complaint against Officer Thomas and thereby securing his removal from the police force. The court therefore concludes that plaintiff's complaint involved

4

a matter of public concern and that there exist fact issues regarding whether Thomas violated plaintiff's First Amendment rights in this case. It does appear that the allegations in this case are close to the threshold of involving mere verbal harassment as to which recovery may not be available, and it is not at all clear that plaintiff will be entitled to recover a significant amount of damages based upon the allegations in this case.[1] Nevertheless, the court is not prepared to hold that the allegations in this case involve a mere *de minimis* injury, given the extreme nature of Thomas' alleged behavior in this case and the close connection between that behavior and plaintiff's attempts to exercise his First Amendment rights.

Plaintiff's Fourth Amendment claims against Officer Thomas are more problematic. Police officers are required under the Fourth Amendment to make a determination of probable cause before any significant pretrial restraint of liberty. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). A police officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *See Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir.), cert. denied, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

Plaintiff argues that Officer Thomas lacked probable cause to make the traffic stop in this case, but it appears that the issues relating to the initial traffic stop are essentially a case of "he said, she said." That is, plaintiff asserts that he did not run a red light, while Officer Thomas asserts that he did. As reprehensible as Officer Thomas' subsequent conduct may have been, a

---

[1] Thomas notes that, unlike the plaintiff in *Thompson*, the plaintiff herein is not an employee who lost his job. While the apparent lack of pecuniary damages may be a significant factor relating to damages, the court concludes that fact issues nevertheless exist regarding a First Amendment violation in this case.

Fourth Amendment violation is not established so long as Thomas actually had reason to believe that plaintiff did, in fact, run the red light in question. Plaintiff alleges that Thomas stated that he was "going to give him a ticket no matter what anyone said." Accepting this statement as true, this would still not be evidence of a Fourth Amendment violation if Officer Thomas had actually seen plaintiff run the red light in question. Assuming that Officer Thomas genuinely believed that plaintiff had run the red light in question, it is understandable that he would be unwilling to be "talked out of" giving plaintiff a ticket.

The court is hesitant to find fact issues in this regard, given that this would seemingly open the possibility for a Fourth Amendment lawsuit in every case in which a plaintiff disputes the facts surrounding an underlying traffic stop. Prior to the traffic stop in question, plaintiff did not know Officer Thomas, and he does not allege any statement on the part of Officer Thomas indicating awareness that plaintiff did not actually run the red light in question. Given that a trial will be required as to Officer Thomas regardless, the court will address this issue at the jury instruction phase, but, at this juncture, the court is disinclined to find triable jury issues regarding plaintiff's Fourth Amendment claims against Thomas.

The court now turns to plaintiff's federal § 1983 claims against defendant City of Holly Springs. As is generally the case in § 1983 cases, it is far more difficult for plaintiff to establish municipal liability on the part of the City than to establish individual liability on the part of Thomas. In the court's view, plaintiff has failed to present evidence establishing genuine fact issues as to whether the alleged misconduct on the part of Thomas in this case was the result of the City's policies or customs, as required by *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). In so concluding, the court would initially note that there is no

6

evidence that the City itself committed any constitutional violation in this case, such as through an official action on the part of the City government. Moreover, plaintiff is unable to establish fact issues regarding whether the Chief of Police Robert Burby, in his capacity as the official city policymaker on law enforcement matters, personally committed constitutional violations in this case. *See Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).

Plaintiff does allege that Burby knew of Thomas' temper problems, but the court concludes that such evidence is insufficient to establish municipal liability for the alleged constitutional violations in this case. In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 109 S.Ct. 1197 (U.S. 1989), the Supreme Court held that a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. In *Board of Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407 117 S. Ct. 1382 (1997), the Supreme Court made it clear that, to establish "deliberate indifference" under *Canton*, "a showing of simple or even heightened negligence will not suffice." Based upon the aforementioned authority, the court concludes that plaintiff's evidence that Chief Burby knew of Thomas' temper problems is insufficient to establish municipal liability for any constitutional violations committed by Thomas. Simply stated, there is a great difference between an officer having temper problems and that officer committing constitutional violations.

The facts of this case are reminiscent of those in *Brown*, which involved allegations that a sheriff had improperly hired a relative as deputy even though that deputy had a criminal record.

7

*Brown*, 520 U.S. at 397. In rejecting plaintiff's argument that the county should be held liable for constitutional violations subsequently committed the that deputy, the Supreme Court wrote as follows:

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong. What the District Court's instructions on culpability, and therefore the jury's finding of municipal liability, failed to capture is whether (the deputy's) background made his use of excessive force in making an arrest a plainly obvious consequence of the hiring decision.

*Id.* at 412. Based upon *Brown*, it is apparent that Thomas' temper problem did not make it "highly likely" that he would "inflict" the particular constitutional violation in this case. The City can accordingly not be held liable based merely upon Chief Burby's knowledge of Thomas' temper problem, and the City is entitled to a dismissal of the § 1983 claims against it.

The court similarly concludes that the City is entitled to a dismissal of the state law claims asserted against it. Even assuming *arguendo* that plaintiff has any valid state law claims to assert against the City in this case,[2] such claims would be barred by one of several defenses arising from the Mississippi Tort Claims Act ("MTCA"). To the extent that plaintiff's claims arise from the malicious acts on the part of Officer Thomas, the MTCA makes it clear that a

---

[2]It seems unlikely to this court that plaintiff does, in fact, have any valid state law theories under which the City might be held liable in this case. That is, it does not appear that vicarious liability would attach under *respondeat superior* principles based upon Officer Thomas' alleged tirade against plaintiff, and it does not appear that the facts of this case support a negligent hiring or retention cause of action against the City.

municipality does not waive sovereign immunity with regard to such acts.[3] *See* Miss. Code Ann. § 11-46-7(2). Moreover, to the extent that plaintiff seeks to recover against the City for its personnel decisions relating to Officer Thomas, the court concludes that recovery would be barred by MTCA affirmative defenses relating to acts "of a governmental entity engaged in the performance or execution of duties ... related to police ... protection." *See* Miss. Code Ann. § 11-46-9(1)(c). It is apparent that the City made its personnel decisions relating to Thomas in the context of providing police protection, and there is no evidence that the City itself acted "recklessly" so as to open the possibility of liability under § 11-46-9(1)(c). Finally, the court would note that another basis for immunity is provided by § 11-46-9(1)(d), which precludes liability for discretionary functions on the part of governmental entities. The City is therefore entitled to a complete dismissal from this case.

In light of the foregoing, the court concludes that defendant City of Holly Springs' motion [66-1] for summary judgment should be granted and that defendant Thomas' motion [64-1] for summary judgment should be denied.

SO ORDERED, this the 13th day of October, 2006.

                                     **/s/ Michael P. Mills**
                                     **UNITED STATES DISTRICT JUDGE**

---

[3] Conversely, Thomas is not entitled to personal immunity for such malicious acts under the MTCA. It appears that the only state law claim which even arguably applies to Thomas' actions is one for intentional infliction of emotional distress, but it seems to this court that Thomas' actions are best addressed under federal Constitutional law. Moreover, a one-year statute of limitations applicable to IIED actions bars recovery for this tort under Mississippi law. *See Hervey v. MetLife General Ins. Corp. System Agency of Mississippi, Inc.*, 154 F.Supp.2d 909, 914 (S.D.Miss. 2001)